DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 2013-32 |
| | ) | |
| LEAYLE BENJAMIN, ABEN MARRERO, | ) | |
| JR., and MICHAEL SAMUELS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ATTORNEYS:

**Nelson Luis Jones, AUSA**
St. Thomas, U.S.V.I.
     *For the plaintiff,*

**Andrew L. Capdeville, Esq.**
Law Offices of Andrew L. Capdeville, P.C.
St. Thomas, U.S.V.I.
     *For the defendant Leayle Benjamin,*

**Darren John-Baptiste, Esq.**
The Practice, PLLC
St. Thomas, U.S.V.I.
     *For the defendant Aben Marrero, Jr.,*

**George H. Hodge, Jr., Esq.**
St. Thomas, U.S.V.I.
     *For the defendant Michael Samuels.*

## MEMORANDUM OPINION[1]

Before the Court are the motions of defendants Leayle

Benjamin ("Benjamin"), Aben Marrero, Jr. ("Marrero), and Michael

Samuels ("Samuels") for a judgment of acquittal pursuant to

---

[1] The Court previously heard arguments and issued a ruling on these motions from the bench. This opinion memorializes the Court's ruling and outlines the reasons for the Court's ruling.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 2

Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33.

## I.   FACTUAL AND PROCEDURAL HISTORY

In 2011, Thomas Bruce ("Bruce") was approached by Leayle Benjamin ("Benjamin") to participate in a scheme to transport cocaine from St. Thomas to Atlanta, Georgia.  He agreed, and was then given instructions by a man he knew as "Bigga." Bigga is alleged to be Aben Marrero, Jr. ("Marrero").  Bruce followed those instructions, and transported nine kilograms of cocaine in his carry-on luggage. In Atlanta, Bruce turned the cocaine over, allegedly, to Marlon Underhill ("Underhill").  Bruce received $9,000 for his efforts.

Benjamin approached Bruce again, and asked him to transport cocaine from St. Thomas to Atlanta in October, 2011.  Bruce agreed. His ticket was again purchased with funds from Marrero. Marrero instructed Bruce to bring a carry-on bag to the airport. Bruce did so.  Once at the airport, Bruce received a call from Benjamin to go into a bathroom near the Spirit Airlines terminal.  Bruce went into the Spirit bathroom, and was handed nine kilograms of a powdered white substance packed into bricks. Bruce placed the bricks in his carry-on, and took the carry-on with him to Atlanta.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 3

Upon his arrival in Atlanta, Bruce was arrested.  His carry-on was searched. During the search, law enforcement officers found nine bricks of what appeared to be cocaine. After being given Miranda warnings, Bruce agreed to cooperate with law enforcement.  He informed the officers that he was supposed to go to a certain motel and meet with Underhill. Using that information, the officers attempted to set up a sting operation.  The officers moved Bruce to a different hotel, and told him to tell his contacts about the switch.

With Bruce's permission, law enforcement officers recorded his phone conversations.  Bruce spoke with Michael Samuels ("Samuels"). Samuels told Bruce to give "six" to a man identified as "Dred."  Bruce also spoke with Underhill. Underhill offered to pick Bruce up from the airport, but Bruce declined.

Once at the hotel, Bruce was set up in a room with bricks of false, or "sham," cocaine.  "Dred" came to Bruce's hotel room.  Bruce let "Dred" into the room, and "Dred" collected six of the bricks of sham cocaine.  "Dred" left the room and was shortly arrested by law enforcement.  Underhill did not come to the hotel.

Benjamin, Marrero, and Samuels (collectively the "defendants") and Underhill were indicted on June 19, 2013.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 4

Count One of the indictment charged Benjamin, Marrero, Samuels, and Underhill with conspiracy to possess with the intent to distribute a controlled substance. Count Two charged Benjamin, Marrero, and Underhill with aiding and abetting possession of a controlled substance with the intent to distribute. Count Three charged Benjamin, Marrero, and Samuels with aiding and abetting possession of a controlled substance with the intent to distribute it.

The Grand Jury returned a superseding indictment on August 20, 2013. The substantive counts in the superseding indictment were the same as in the preceding June 19, 2013, indictment. The only change was the inclusion of a forfeiture allegation.

This case went to trial on October 1, 2013. At trial, the government introduced the testimony of eleven witnesses. The first, Federal Bureau of Investigation ("FBI") Special Agent Michael Day, testified about a recording device used to record a conversation between Benjamin, Bruce, and a confidential informant.

The second witness to testify was Braulio Ventura ("Ventura"). Ventura testified regarding his role as a confidential informant for the government in this matter. Ventura stated that he had consented to making a video recording of a meeting between himself and Benjamin. Ventura also

testified as to the content of that recorded conversation, and his understanding of what the conversation was about and meant.

The government's third witness was Otto Etienne ("Officer Etienne"), an officer for United States Customs and Border Protection. Officer Etienne testified about the recording system used at the Cyril E. King Airport (the "airport") on St. Thomas, United States Virgin Islands.

Fourth, the government called Special Agent Jason Allen ("Agent Allen"), of Homeland Security Investigations. Agent Allen testified about his role in downloading a video from the cameras at the airport on to a DVD.

The fifth witness was Bruce. Before Bruce could take the oath, Samuels requested a sidebar.  The request was denied. Samuels then asked for "the transcript of Mr. Bruce" before Bruce took the stand. The Court instructed Samuels to wait, and indicated the request would be dealt with shortly. Bruce took the oath, and the Government began direct examination. Samuels stated he had a continuing objection.

Bruce testified to his role in the alleged conspiracy. Specifically, he stated that he was recruited by Benjamin to transport cocaine. Bruce testified that Benjamin indicated Bruce would be taking cocaine from St. Thomas to Atlanta. Bruce further testified that he was given specific instructions on how

to take cocaine from the airport to Atlanta by Marrero. Bruce also stated that Marrero provided the money for Bruce's plane tickets. Bruce testified that he transported approximately nine kilograms of cocaine.

Bruce stated that his instructions were to give three of the kilograms of cocaine to Marlon Underhill ("Underhill"). Bruce testified that his brother-in-law, Samuels, instructed Bruce to give the remaining six kilograms to "Dred." Bruce also stated that upon his arrival at the airport in Atlanta, he was arrested. Following his arrest, Bruce said that he cooperated with the Government.

Following the Government's direct examination of Bruce, the Court had a conference at sidebar with counsel. At sidebar, the Court instructed counsel not to mention with specificity the sentence to which Bruce had been exposed.  The Court also told the attorneys that they could question Bruce about his motivations, and could discuss that Bruce faced "substantial" time or an "extreme" sentence (or could use any other adjective they chose).  Only the specific sentence, the term of years up to life imprisonment, was not to be reached.  Marrero and Benjamin noted their continuing objection to this limit on cross-examination.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 7

Thereafter, Benjamin requested production of any Jencks material for Bruce. A hearing was held at sidebar during which the Government represented that it had not yet received correct grand jury transcripts for Bruce. Upon learning for the first time that the Government had not obtained the necessary Jencks material, the Court proposed postponing cross-examination of Bruce until the next trial day, to allow defense counsel the opportunity to receive and make use of the Bruce transcripts. Defense counsel noted their concerns that a gap in time between direct and cross-examination of Bruce would give Bruce's testimony more weight in the jury's minds. Samuels, Benjamin, and Marrero asked the Court to strike Bruce's testimony due to the Government's failure to have the necessary Jencks material. The Court denied the request, and instructed the Government to call its next witness.

The Government's sixth witness was Tyrone Shire ("Shire"), a forensic chemist employed by the Drug Enforcement Administration ("DEA"). Shire was qualified as an expert in forensic chemistry.  Shire then testified that he had analyzed evidence, consisting of nine kilograms of a powdered substance. He stated that seven kilograms had tested positive as cocaine, and two kilograms had not tested positive for controlled substances. Shire testified that thereafter he had sealed the

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 8

evidence in a box, which he signed and labeled.  Shire identified government's exhibit 16 as the box, which included the nine kilograms of powdered substance that he analyzed.

The Government's seventh witness was Todd Bailey ("Officer Bailey"), a task force officer with the Department of Homeland Security at the international airport in Atlanta, Georgia. Officer Bailey testified that he had been one of the officers to arrest Bruce at the airport. Officer Bailey stated that following Bruce's arrest, Bruce's luggage was searched. Officer Bailey testified that when Bruce's luggage was opened, nine kilograms of suspected cocaine wrapped with plastic or tape was immediately apparent. Officer Bailey then testified that he had Bruce place consensually monitored phone calls to individuals Bruce had indicated were going to receive cocaine from Bruce. Bruce was provided with six fake kilograms of cocaine that were taken to the hotel in which Bruce was to meet "Dred." Court recessed for the day during the direct examination of Officer Bailey.

The Government produced Jencks material for Bruce on October 2, 2013. On the next trial date, October 3, 2013, trial began with the cross-examination of Bruce. On cross-examination, Bruce testified that he had been offered a deal by the prosecutors in Atlanta.  He further testified that, as part of

his plea deal with the Government, his cooperation might result in a recommendation from the prosecutors in his case for a reduction in his sentence. Bruce agreed on cross-examination that the exposure he faced was "very high" and "terrible" and that he wanted his plea deal to work out.

Thereafter, the Government continued its direct examination of Officer Bailey. Officer Bailey testified about the phone calls made by Bruce following Bruce's arrest and the sting set-up with Bruce's cooperation. Officer Bailey also relayed the details about Dred's arrest, following the sting operation. Officer Bailey stated that the six kilograms of sham cocaine had been recovered from Dred. Following the Government's direct examination, the defense counsel had the opportunity to cross-examine Officer Bailey. Benjamin, Underhill, and Samuels' attorneys all vigorously cross-examined Officer Bailey.

The eighth witness called by the Government was Special Agent Jennifer Sutton, from Homeland Security Investigations. Agent Sutton testified that she transported the seized cocaine from the airport in Atlanta to an individual identified as Kevin Degraaff.  Kevin Degraaff was further identified as a Department of Homeland Security seized property evidence custodian.

The Government's ninth witness was Kevin Degraaff, a seized property specialist for Homeland Security Investigations.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 10

Degraaff testified that he received the cocaine obtained from
Bruce. Degraaff stated that the cocaine was given to him by
Agent Sutton and another agent, who had transported it together
from the airport. Degraaff testified that he then took the
evidence, logged the evidence, and placed the evidence in a
safe. Degraaff stated that he later shipped the seized evidence
to the DEA lab in Miami, Florida. Degraaff stated that he
received the evidence back from the DEA. Finally, Degraaff
explained the method of packing and sealing suspected drug
evidence for shipment to the DEA lab, and the typical packaging
and sealing seen when drug evidence is returned by the DEA.

As its tenth witness, the Government called Special Agent
Michael Grossman, of the DEA. Agent Grossman discussed telephone
records received from various telecommunications companies. He
also testified about records received from Delta Airlines in
response to DEA subpoenas. The Delta Airline records showed the
date of the flights on which Bruce travelled. The phone records
showed calls made and received by Bruce and the defendants.

During cross-examination of Agent Grossman, counsel for
Marrero impeached Agent Grossman. Defense counsel established
that Agent Grossman had given incorrect testimony under oath
before the Grand Jury. Specifically, Marrero's counsel
challenged Agent Grossman's Grand Jury testimony regarding a

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 11

backpack that Agent Grossman stated Marrero was wearing at the airport the day Bruce received drugs.  Government Exhibit 3 was a video of a hallway that connected to a bathroom.  Bruce had received the cocaine he transported inside the bathroom shown in Exhibit 3. Marrero also entered the bathroom in Exhibit 3. Upon review of the video, Marrero does not appear to have been carrying anything at all. Marrero's counsel impeached Agent Grossman quite thoroughly on this point. Agent Grossman was also cross-examined by defense counsel as to the content and meaning of the telephone records and Delta records.

The Government's eleventh and final witness was Special Agent Rafael Fernandez, of the FBI. Agent Fernandez testified about a statement that Benjamin made while in custody. Following Agent Fernandez's testimony, the Government rested.

Thereafter, Benjamin, Underhill, Samuels, and Marrero all moved for judgments of acquittal. Counsel for Marrero also moved to dismiss the indictment. Specifically, Marrero challenged the Government's failure to timely turn over additional Grand Jury information for Agent Grossman.  He argued that Agent Grossman's misstatement to the Grand Jury prejudiced his client, and that the Government's late disclosure of the transcript, which he received the previous day, was inappropriate. The Court denied the motions for judgment of acquittal as to Counts One and

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 12

Three, and took the motions under advisement as to Count Two.
The Court also took under advisement Marrero's motion to
dismiss.

Both Benjamin and Underhill put on defense witnesses.
Samuels and Marrero chose not to do so.  The defendants then
rested. That evening the jury was charged, and was instructed to
return on October 5, 2013, for closing arguments and then
deliberation.

On October 5, 2013, the jury returned a verdict finding
Benjamin, Marrero, and Samuels guilty of Count One and Count
Three. Underhill was acquitted of all counts.

Thereafter, the defendants filed motions for judgments of
acquittal or a new trial.[2]  Defendants Samuels and Benjamin
allege that the government failed to disclose required Grand
Jury transcripts, and that they are thus entitled to a new
trial.  Marrero, through counsel, also argues that Agent
Grossman's misrepresentations to the Grand Jury require a new
trial. Marrero and Benjamin argue that the evidence in this case
was insufficient for conviction, and ask for a judgment of

---

[2] Samuels also filed something entitled an "Affidavit in Support of Vacating
Judgment and Verdict, Challenge to Jury, Suspension of Power's [sic], Change
in terms of Agreement, Jurisdiction is Challenged in All Aspects, Attempt to
Defraud, and Deprive an American of Rights."  This was not drafted by an
attorney or by Samuels himself. Rather, it was drafted by another individual
detained at MDC Guaynabo. That individual signed the document as "Brett Jones
– Temporary Review Counsel and Witness." As this individual is not licensed
to practice law in this or any other jurisdiction, and is not a party to this
case, this "affidavit" is not properly before the Court.

acquittal. Finally, Marrero, filing *pro se*, states that he did not receive competent counsel and requests appointment of new counsel and a new trial on that basis.

## II.   DISCUSSION

### A. Rule 29 – Motion for a Judgment of Acquittal

A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'")(quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

An insufficiency finding should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 14

F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also*

*United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984)

("Our task is not to decide what we would conclude had we been

the finders of fact; instead, we are limited to determining

whether the conclusion chosen by the fact finders was

permissible.").

The government may sustain its burden entirely through

circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United*

*States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). A motion for

acquittal should be granted when there is a "total absence of

evidence that [the] defendant had any connection" with the

crimes alleged and proved. *United States v. Darrell*, 629 F. 2d

1089, 1091 (5th Cir. 1980) (conviction reversed with directions

to enter judgment of acquittal in mail fraud case, noting there

was little Fifth Circuit precedent saying what evidence would

permit an inference of the defendant's identity).

**B. Rule 33 – Motion for a New Trial**

When deciding a Rule 33 motion for a new trial, the Court

is provided somewhat more discretion than what is afforded under

Rule 29.  Under Rule 33, the Court may grant a new trial "in the

interest of justice." *United States v. Charles*, 949 F. Supp.

365, 368, 35 V.I. 306 (D.V.I. 1996).  In assessing such

"interest", the court may weigh the evidence and credibility of

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 15

witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990).  If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id*.  "The burden is on the defendant to show that a new trial ought to be granted. Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Clovis*, Crim. No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5 (D.V.I. Feb. 12, 1996).

A defendant is required to show there is newly discovered evidence or that there was reversible error at his trial in order to be granted a new trial pursuant to Federal Rule of Criminal Procedure 33. "[A] district court 'can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted.'" *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

### III. <u>ANALYSIS</u>

**A. Rule 29**

Both Marrero and Benjamin have filed post-trial motions for a judgment of acquittal pursuant to Rule 29 on Counts One and

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 16

Three.  A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *Bobb*, 471 F.3d at 494. The Government's burden to show proof beyond reasonable doubt must be met as to each element of the alleged crimes. *See In re Winship*, 397 U.S. 358, 361-62 (1970).

"To establish a charge of conspiracy, the Government must show (1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal, which [the defendant] knowingly joined. These elements incorporate a requirement that [the defendant] had knowledge of the specific illegal objective contemplated by the particular conspiracy. . . . The Government must establish each element beyond a reasonable doubt." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010)(internal citations omitted). "A conspiracy can be proven by direct or circumstantial evidence. Its existence can be inferred from evidence of related facts and circumstances from which it appears, as a reasonable and logical inference, that the activities of the participants could not have been carried on except as a result of a preconceived scheme or common understanding." *Id.* (internal citations omitted).

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 17

To prove that a defendant committed the crime of possession of a controlled substance with intent to distribute, the government must prove the following essential elements beyond a reasonable doubt: (1) that the defendant knowingly possessed a controlled substance with (2) the intent to distribute it. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). "When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone." *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) (citation omitted).

Here, videotaped conversations were admitted in which Benjamin had a conversation with Ventura. Ventura testified that he understood the conversation to mean that Benjamin had a network that could move cocaine from St. Thomas to other places. Thereafter, Bruce testified that he was recruited by Benjamin for the purpose of transporting cocaine from St. Thomas to Atlanta. Bruce further testified that his tickets to Atlanta were paid for with cash given to him by Marrero. Bruce also testified that either Marrero (on his first trip) or Benjamin (on Bruce's second trip) gave Bruce the instructions that Bruce needed to enter the airport, obtain the cocaine, and from there transport it to Atlanta. Evidence adduced at trial also

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 18

indicated that Marrero was an airport employee, and that airport employees had access to the airport not requiring that they go through security. Evidence was also presented that when Bruce was stopped at the airport, he was in possession of nine kilograms of a powdered substance.  Seven of those kilograms were cocaine, and two were something similar to drywall that had been packaged the same way as the cocaine, or "sham cocaine."

Bruce testified that Samuels had instructed Bruce to give six kilograms of cocaine to someone identified as Dred. Benjamin had instructed Bruce that the remaining three kilograms of cocaine were for Underhill. Following his arrest in Atlanta, Bruce agreed to participate in a sting operation in which he offered to meet with Dred and Underhill.  Dred came to Bruce's hotel room and retrieved six bricks of a substance packaged to look like those taken from Bruce by the officers in Atlanta. Thereafter, Dred was arrested as well.

"[A]n admitted-conspirator's trial testimony regarding who was or was not his coconspirator, . . . remains highly pertinent to the question of the defendant's knowing complicity in the crime." *United States v. Claxton*, 685 F.3d 300, 309 (3d Cir. 2012). "[I]t is clear that a conspirator's statement may be given great weight when it directly imputes knowledge of a drug trafficking objective to a defendant. It is also clear that any

conclusory statement or mention by a co-conspirator that a defendant is involved in criminal conduct -- such as a naked statement that a defendant is a coconspirator or a "driver," even when coupled with keeping bad company and engaging in suspicious conduct -- cannot serve as a basis to impute knowledge of the object of the conspiracy." *United States v. Mark*, Crim. No. 2006-80, 2012 WL 2821935 (D.V.I. July 10, 2012).

Here, Bruce testified not only that each of the defendants was a member of this conspiracy, but also that the defendants undertook specific acts and statements in furtherance of that conspiracy. Samuels instructed Bruce via telephone to give six kilograms of cocaine to Dred. Marrero purchased Bruce's plane tickets and, on one occasion, gave Bruce instructions on how to obtain the cocaine for transport while in the St. Thomas airport. Benjamin recruited Bruce to transport cocaine from St. Thomas to Atlanta. These statements do far more than imply that the defendants "kept bad company." Rather, these statements lead to a logical inference that these defendants intended for cocaine to be transported from the Virgin Islands to Atlanta for distribution.

Considering this evidence and all reasonable and logical inferences therefrom in the light most favorable to the Government, the Court finds that a reasonable trier-of-fact

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 20

could find beyond a reasonable doubt that Marrero and Benjamin
participated in a conspiracy to possess with an intent to
distribute cocaine. The manner in which Benjamin and Marrero are
alleged to have acted in concert would be sufficient for a jury
to find that both Benjamin and Marrero had an agreement to
possess and then transport cocaine from St. Thomas to Atlanta.

A defendant who participates in a conspiracy is liable for
the reasonably foreseeable acts of his coconspirators committed
in furtherance of the conspiracy. *United States v. Ramos*, 147
F.3d 281, 286 (3d Cir. 1998). The evidence at trial also is
sufficient to support a finding that Benjamin and Marrero aided
and abetted possession with the intent to distribute cocaine.
Benjamin and Marrero were part of a conspiracy that contemplated
moving cocaine from St. Thomas to Atlanta. As a result, they are
each responsible for the actions of Bruce, Samuels, and Dred in
furtherance of that goal.  The amount of the cocaine -- seven
kilograms -- is sufficient for a reasonable jury to infer that
it was meant for distribution purposes rather than personal use.

Benjamin and Marrero both argue that the bulk of the
testimony about their involvement came from Bruce, and that such
testimony cannot be given the weight they believe it received.
As this Court has stated, "[I]t is clear that a conspirator's
statement may be given great weight when it directly imputes

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 21

knowledge of a drug trafficking objective to a defendant."

*United States v. Mark*, Crim. No. 2006-80, 2012 WL 2821935

(D.V.I. July 10, 2012). Bruce was a co-conspirator during these

activities, and his testimony went directly to the drug

trafficking objectives of Benjamin and Marrero. It may be given

great weight, as a result, despite Benjamin and Marrero's

arguments otherwise.

Marrero argues that Bruce's testimony cannot stand up to

the type of intense scrutiny he would like the Court to employ.

However, it is not the Court's role to second-guess the jury's

credibility determination as to Bruce's testimony. *See Brodie*,

403 F.3d at 133 ("Courts must be ever vigilant in the context of

[Rule] 29 not to usurp the role of the jury by weighing

credibility and assigning weight to the evidence, or by

substituting its judgment for that of the jury."); *see also*

*Ashfield*, 735 F.2d at 106 ("Our task is not to decide what we

would conclude had we been the finders of fact; instead, we are

limited to determining whether the conclusion chosen by the

factfinders was permissible.").

Benjamin argues that the trial evidence did not implicate

him in anything beyond his alleged recruitment of Bruce to

transport the cocaine. Similarly, Marrero argues that the

Government has failed to adduce evidence that Marrero

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 22

specifically was the individual who placed the drugs into
Bruce's hands or that Marrero brought the drugs into the
airport. These contentions ignore the fact that a defendant's
culpability in a conspiracy is not determined or measured by the
amount of participation. Even a minor role may be sufficient.

The jury credited Bruce's testimony. Considering that
testimony in the light most favorable to the Government, a
rational finder of fact could have found that both conspiracy to
possess with intent to distribute and possession with intent to
distribute were proven beyond a reasonable doubt.  As such, Rule
29 relief is not appropriate.

**B. Rule 33**

The defendants are required to show there is newly
discovered evidence, or that there was reversible error at his
trial, in order to be granted a new trial pursuant to Federal
Rule of Criminal Procedure 33. "[A] district court can order a
new trial on the ground that the jury's verdict is contrary to
the weight of the evidence only if it believes that there is a
serious danger that a miscarriage of justice has occurred—that
is, that an innocent person has been convicted." *Davis*, 397 F.3d
at 181 (internal quotation omitted). Further, the "burden is on
the defendant to show that a new trial ought to be granted.
Accordingly, the burden is on [the defendant] to show that his

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 23

trial resulted in a miscarriage of justice." *United States v. Saldana*, Crim. No. 2009-32, 2010 WL 3119967 (D.V.I. Aug. 4, 2010) *aff'd*, 473 F. App'x 118 (3d Cir. 2012)

In total, the defendants argue six bases for a new trial. The Court will address each in turn.

## 1. Agent Grossman's Grand Jury Testimony

The defendants argue that Agent Grossman's incorrect testimony before the first Grand Jury as to whether or not Marrero was carrying a backpack or bag when he went into the bathroom at the airport, and alleged late disclosure of Agent Grossman's Grand Jury transcripts, merit a new trial.

In his testimony before the first Grand Jury, Agent Grossman testified that Marrero was carrying a backpack or bag when he entered the Spirit Airline bathroom.  He further stated that the bag was full when Marrero entered the bathroom, and empty when Marrero exited the bathroom. This testimony was clearly incorrect, as video footage of the Spirit Airlines bathroom, and Marrero's entrance into and exit from that bathroom, does not show him with any sort of bag or backpack. Both the transcript from Agent Grossman's testimony before the first Grand Jury and the videotapes were provided to the defense. Agent Grossman purportedly corrected the erroneous testimony when he testified before the second Grand Jury.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 24

"In *Brady v. Maryland*, the Supreme Court held that due process forbids a prosecutor from suppressing 'evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005). "*Brady*, relying on the Due Process Clause, requires the government to disclose any evidence in its possession that is favorable to the accused and material to either guilt or punishment. *Giglio* extended this rule to include impeachment evidence as well as exculpatory evidence." *United States v. Edwards*, 264 F. App'x 139, 142 (3d Cir. 2008)(internal citations omitted). "To establish a Due Process violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Id*. (internal quotation omitted).

It cannot be doubted that information tending to show that Agent Grossman made misstatements as to the evidence in this case, and did so while under oath, is valuable impeachment evidence. As such, it certainly falls within the purview of *Brady/Giglio*. *See id*. The Government represents that both the incorrect testimony and the videos were provided to defense counsel. No defendant contests that representation. As such,

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 25

the material was not suppressed and the concerns of *Brady* and *Giglio* are not implicated. In fact, defense counsel made use of this information and did impeach Agent Grossman's testimony when Agent Grossman took the stand.

As to the second Grand Jury transcripts, the Government represents that no *Brady* information was contained therein. That testimony, the Government states, consisted entirely of Agent Grossman correctly stating the evidence and then testifying in support of a forfeiture allegation. This ignores, however, the value of Agent Grossman's contradictory testimony for impeachment purposes. Comparing Agent Grossman's testimony from one grand jury, under oath, to the second grand jury, also under oath, and finding discrepancies tends to impeach his credibility as a witness. The Government thus had an obligation to disclose Agent Grossman's testimony before the second grand jury to defense counsel.

"Under *Brady*, suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material to either guilt or punishment. To establish a due process violation under *Brady* a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *United States v.*

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 26

*Noble*, 251 F. App'x 792, 796 (3d Cir. 2007)(internal citations and quotations omitted).

As discussed above, the Government was clearly obligated to provide the evidence regarding Agent Grossman's inconsistent testimony before the second grand jury.  It is equally clear that, as impeachment evidence, it was favorable to the defendants' cases.  The remaining issue is thus whether this evidence would have been material to the defendants' defenses.

> Evidence is material when there is a reasonable probability that it would have affected the outcome of the trial. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.")

*Noble*, 251 F. App'x at 796.

No defendant has proffered an explanation of how this impeachment evidence would have been material, and Court is unable to divine how it might undermine the fairness of the trial.  Though Agent Grossman's testimony before the second grand jury differed from the testimony he gave to the first grand jury, it did not differ in a material way from his testimony at trial.  The discrepancies between Agent Grossman's

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 27

testimony before the first grand jury, and his later testimony

which corrected his previous errors, were used to impeach him

quite extensively at trial. The Court cannot conceive of what

further cross-examination might have resulted from the defenses'

possession of the second grand jury transcripts.  Furthermore,

even assuming that the trial jury might have discounted Agent

Grossman's testimony in its entirety, such testimony was not the

focus of the trial and does not undermine in any substantial way

the weight of the Government's case. As the transcript was not

material to the defense, the Government's failure to disclose

favorable impeachment evidence, in this instance, does not

amount to a Due Process violation under *Brady*.

The Court also notes that at no time did any defendant

request Jencks material following the Government's direct

examination of Agent Grossman. The Jencks Act is triggered after

a witness called by the United States has testified on direct

examination, and the defendant has made a timely motion to the

court to order the production of a statement of that witness

that is in the government's possession. *See* Fed. R. Crim. P.

26.2(a). If a timely motion is not made at trial, the defendant

has waived his right to relief based on the failure to receive

that statement. *United States v. Joseph*, 800 F. Supp. 1303, 1310

(D.V.I. 1992) *aff'd*, 996 F.2d 36 (3d Cir. 1993);

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 28

*United States v. Petito*, 671 F.2d 68 (2d Cir. 1982), *cert.*

*denied*, 459 U.S. 824 (1982); *United States v. Carter*, 613 F.2d

256 (10th Cir. 1979), *cert. denied*, 449 U.S. 822 (1980). As no

defendant requested Jencks material following Agent Grossman's

direct testimony, the defendants have waived any right to relief

under *Jencks* based on the Government's alleged late disclosure

of the second Grand Jury transcripts.

The Court also notes that the alleged misstatements made by

Agent Grossman, and contained within transcripts from his

testimony before the first Grand Jury, regarding Marrero's

possession of a backpack or bag and his later recantation of

that view were the subject of vigorous cross-examination. "When

undisclosed Jencks material is merely repetitious and/or

cumulative of evidence available to the defendant at trial, the

Jencks error can be deemed harmless, especially where the

undisclosed pretrial statements do not contain impeachment

material that would add to an already effective cross-

examination of a key witness." *United States v. Hill*, 976 F.2d

132, 142 (3d Cir. 1992).  Agent Grossman was extensively cross-

examined by Marrero as to the misstatements he made before the

first Grand Jury and his current understanding that such

statements were in error.  As such, any failure to disclose

Grossman's second Grand Jury testimony would be harmless.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 29

Finally, Marrero asserts that Agent Grossman's admitted misstatements before the first Grand Jury merit dismissal of the indictment or a new trial. "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)(internal quotations omitted). An indictment that is valid on its face may not be challenged as to the reliability or competence of the evidence presented to the Grand Jury. *Id.* Marrero does not challenge the prosecutor's actions before the Grand Jury. Rather, Marrero challenges the admission of Agent Grossman's testimony before the Grand Jury and the Grand Jury's potential reliance on it. Thus, challenging the sufficiency of the evidence is precisely what Marrero seeks to do here. The Court declines to look behind the face of the indictment to determine if the evidence upon which it was based is sufficient. *See id.*

As such, Rule 33 relief on the basis of the Government's purported failure to timely provide transcripts of Agent Grossman's testimony before the Grand Jury is not appropriate.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 30

## 2. Bruce's Jencks Material

Following Bruce's direct testimony on the first day of trial, the defendants requested Jencks material.  At that point, the Government informed the Court that it did not have transcripts available for the defense because the Government was waiting to receive the transcripts from the court reporter. The Government indicated that the court reporter needed to make corrections to the transcript of Bruce's Grand Jury testimony, and that the corrected transcripts had not been received. As a result, the Court postponed cross-examination of Bruce until the next day of trial, in order to give defense counsel the benefit of the transcript.  The defendants argue that the extended time between the Government's direct examination of Bruce and their cross-examination was prejudicial and that the Court should have struck Bruce's testimony.  The Court's failure to do so, the defendants contend, merits a new trial. Samuels also insinuates that the Government's failure to identify specifically what the "corrections" to the transcript were merits a new trial.

"Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted,

on the other." *United States v. Miranda*, 526 F.2d 1319, 1324 (2d Cir. 1975), *cert. denied*, 429 U.S. 821.

Here, the Government was not completely without fault. It is always the Government's responsibility to procure in a timely fashion all documents and information that it anticipates turning over to the defense. It is true that the Government anticipated having the necessary materials prior to trial. It is also true that the court reporter did not deliver them. While the court reporter's activities are not something the Government could control, the Jencks Act, given its strict language, would seem to contemplate that the Government will anticipate and accommodate for logistical difficulties when preparing for trial.

Even so, any injury to the defendants here was minimal. Though the defendants make much of the lapse of time between Bruce's direct examination and their cross-examination two days later, cross-examination occurred on the very next day of trial. That is, the gap was no larger than it would have been had the Court adjourned for the evening at the close of Bruce's direct examination and begun cross-examination the first thing the following day of trial. The defendants cross-examined Bruce the second day of trial, and had the benefit of Jencks material in doing so. As such, the Court is not persuaded that the extreme

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 32

sanction of striking Bruce's testimony is merited.  Because the
Court's decision to continue cross-examination was within its
discretion in sanctioning the Government's failure to timely
produce its Jencks material for Bruce, it is not reversible
error of the sort that would merit Rule 33 relief.

The Court is also not persuaded by Samuels' argument that a
court reporter's corrections to a transcript must be disclosed.
There has been no indication that Bruce's testimony itself was
"corrected."  Rather, the Government indicates that
transcription errors were being corrected.  Such information
would not be discoverable by the defense.  As such, Rule 33
relief is not merited on this ground either.

## 3. Restriction of Cross-Examination on Bruce's Specific Sentence

Benjamin argues that the Court improperly restricted or
limited cross-examination of Bruce on the issue of Bruce's
sentence reduction and that, as a result, a new trial is
merited.

> The Confrontation Clause guarantees the right of
> a criminal defendant to confront witnesses for
> the purpose of cross-examination, and an
> important part of the cross-examination is the
> exposure of the witness's biases or motivation
> for testifying. Nevertheless, a district court
> retains wide latitude insofar as the
> Confrontation Clause is concerned to impose
> reasonable limits on such cross-examination
> based on concerns about, among other things,
> harassment, prejudice, confusion of the issues,

> the witness' safety, or interrogation that is
> repetitive or only marginally relevant.

*United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005).

The Third Circuit has "recognized a two-part inquiry in determining whether a specific limitation violates a defendant's rights under the Confrontation Clause: (1) whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose." *Id.* The Confrontation Clause does not require that the defense be able to inquire as to the specific term of years to which a cooperating witness was exposed. *See United States v. John-Baptiste*, 747 F.3d 186, 212 (3d Cir. 2014)("The District Court limited inquiry only into specific sentences that could have been imposed if the witnesses had refused to cooperate—a line of questioning that we have allowed trial courts to curtail.")

In *United States v. Mussare*, 405 F.3d 161 (3d Cir. 2005), the District Court allowed extensive discussion of the plea deal between a cooperating witness and the Government. "The District Court sustained objections to only a few questions; two dealt with the maximum penalties [the cooperating witness] would face if convicted under the initial indictment, and a third dealt with what his lawyer told him regarding his plea bargain."

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 34

*Mussare*, 405 F.3d at 170. The Third Circuit upheld these limitations on cross-examination, as there were alternative ways of seeking information regarding the cooperating witness's potential bias or motive in testifying. *Id.*

In the instant case, the Court's only limitation on cross-examination of Bruce as to his plea agreement was that counsel could not inquire as to the specific term of years Bruce might have faced had he not cooperated. Counsel was told that they could use any descriptors desired or necessary to convey the severity of Bruce's potential sentence. During cross-examination, Bruce agreed that the exposure he faced was "very high" and "terrible" and that he wanted his plea deal to work out. This limitation is, for practical purposes, no different than that imposed by the district court in *Mussare*. *See id.* Thus, as in *Mussare*, the Court is not convinced that "the jury might have received a significantly different impression of their credibility," *id.* at 169, had Bruce been permitted to testify as to the specific sentence he might have faced.

As the limitation on the scope of cross-examination as to the term of years faced by Bruce had he not cooperated with the Government is within the bounds allowed by the Confrontation Clause, a new trial is not merited on this basis.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 35

## 4. Admission of the Benjamin/Ventura Videotape

Benjamin argues that the Court improperly admitted the videotape of a conversation between Benjamin and Ventura about the transfer of up to twelve kilograms of cocaine from St. Thomas to the mainland. Specifically, Benjamin takes issue with the statements Benjamin makes in the video about having just "sent 45" to buyers in Atlanta.  On direct examination, Ventura, the other party to the conversation, testified that he did not know what that number referred to or meant.  Ventura stated that he understood the conversation to be about getting Benjamin's assistance to send cocaine from St. Thomas to the mainland and that Benjamin said he "has his people" to send the narcotics to Miami and Atlanta. Benjamin contends that these statements are inadmissible under Federal Rules of Evidence 404(b) ("Rule 404(b)") and 403 ("Rule 403").

As the Court indicated to Benjamin's counsel during trial, these statements do not run afoul of Rule 404(b). Benjamin was charged with being a member of a conspiracy beginning from a time unknown and continuing to October, 2011. The criminal purpose of that conspiracy was to transport cocaine from St. Thomas to the mainland. The Government charged that the means and manner of the conspiracy involved sending cocaine through the St. Thomas airport to individuals in Atlanta, Georgia and

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 36

Miami, Florida.  The conversation that Benjamin had with Ventura occurred during the time period of the alleged conspiracy, discussed the provision of cocaine from Ventura to Benjamin, and furthered the purpose of the alleged conspiracy to transport cocaine from St. Thomas to Atlanta and Miami.

Rule 404(b) limits the admission of evidence of a crime, wrong, or other act. *See* Fed. R. Evid. 404(b). It does not prevent the admission of acts which constitute part of the crime with which the defendant is charged. *See Carter v. Hewitt*, 617 F.2d 961, 967 (3d Cir. 1980); *United States v. DeLuna*, 763 F.2d 897, 912-13 (8th Cir. 1985) ("Evidence which is probative of the crime charged, and not solely uncharged crimes, is not "other crimes" evidence.") *overruled on other grounds by United States v. Pierce*, 479 F.3d 546 (8th Cir. 2007). As the conversation is evidence of the very conspiracy with which Benjamin was charged, its admission was not barred by Rule 404(b).

Benjamin also contends that the conversation should have been excluded under Rule 403 as unfairly prejudicial. When considering a Rule 403 issue, "the trial court should carefully weigh the probative value of the proffered testimony against its possible prejudicial effects." *Gov't of Virgin Islands v. Felix*, 569 F.2d 1274, 1280 (3d Cir. 1978). Rule 403 "does not offer protection against evidence that is merely prejudicial, in the

sense of being detrimental to a party's case. Rather, the rule

only protects against evidence that is *unfairly* prejudicial.

Evidence is unfairly prejudicial *only if* it has an undue

tendency to suggest decision on an improper basis, commonly,

though not necessarily, an emotional one." *Carter*, 617 F.2d at

972 (emphasis added).

The Court cannot think of any use of this conversation

which would be unfairly prejudicial such that it outweighed the

conversation's probative value. Benjamin's statements reflected

that he was part of a plan to transport cocaine from St. Thomas

to Miami and Atlanta. Use of that statement to prove that he, in

fact, committed such acts in furtherance of the very conspiracy

with which he was charged would not be improper.  As such, the

Court does not believe this evidence ran afoul of Rule 403.

## 5. Admission of Benjamin's Statement to Law Enforcement

Benjamin also challenges the admission of the testimony of

Agent Fernandez, which recounted statements made by Benjamin

while in custody. Without prompting, while in custody, Benjamin

told federal agents that, in essence, he had been wondering why

it had taken them so long to apprehend him and that he knew

apprehension was coming because of an incident that happened in

Atlanta.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 38

Contrary to Benjamin's arguments, the Court finds that there was probative value to the statement proffered by the Government. A statement by a defendant indicted of a conspiracy which indicates that he expected to be arrested can be evidence of consciousness of guilt. *See United States v. Webster*, 769 F.2d 487 (8th Cir. 1985)(holding that in a case where defendant said he was surprised it had taken so long to find him, the defendant had "volunteered statements shortly after his arrest that tended to show some consciousness of guilt."); *cf.* Ryan v. Miller, 303 F.3d 231, 255-56 (2d Cir. 2002)(holding that statements that defendant expected to go to jail were not meaningless, but that they did not express clear consciousness of guilt where publicity and defendant's alleged involvement was so pervasive the defendant had been considered a criminal prior to his arrest).

Evidence is unfairly prejudicial only if it has an undue tendency to suggest decision on an improper basis. *Carter*, 617 F.2d at 972 Here, the Court, given the state of the evidence, discerns nothing in the record that fosters a decision founded on an improper basis. As such, the Court finds that the evidence did not run afoul of Rule 403.

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 39

## 6. Admission of the Drug Evidence

Benjamin argues that a new trial is merited because the drug evidence admitted in this case was not properly authenticated due to gaps in the chain of custody. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. "To establish a chain of custody, the government need only show that it took reasonable precautions to preserve the evidence in its original condition, even if all possibilities of tampering are not excluded. Absent actual evidence of tampering, a trial court may presume regularity in public officials' handling of contraband." *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998). Some gaps or log inconsistencies go to weight of the evidence, not its admissibility. *See id.*

Here, the Government introduced the testimony of an agent who was present for the seizure of the drug evidence.  Officer Bailey testified to the seizure of the cocaine, and its subsequent transfer to Agent Sutton.  Agent Sutton testified that she filled out the Government's usual forms for evidence cataloguing, and provided the evidence and the form to Degraaf. Degraaf testified to the handling of seized drug evidence by the

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 40

agency and the contents of the form. Finally, the DEA chemist

testified as to his receipt of the evidence and its analysis.

Though Benjamin points to some unexplained markings on the

log sheet, these inconsistencies are the sort that go to the

weight of evidence, not its admissibility. *See id.* Benjamin also

argues that the lapse of time between Degraaf sending the drug

evidence to the DEA and Degraaf receiving the returned evidence

from the DEA is a serious gap in the chain of custody.  This is

not the case.  Degraaf and Shire both testified as to the

process by which evidence is sent to DEA for testing and

actually tested.  There was no evidence adduced on direct or on

cross-examination which tends to show that what happened in this

case was outside the norm or constitutes "actual evidence of

tampering[.]" *Id.*

Considering the available evidence as to the Government's

handling of the evidence and the testimony provided, the Court

finds that the evidence was properly authenticated.  As such, a

new trial is not merited on this basis.

**7. Ineffective Assistance of Counsel**

Finally, Marrero alleges that he received ineffective

assistance of counsel and is entitled to a new trial as a

*United States v. Benjamin, et al.*
Criminal No. 2013-32
Memorandum Opinion
Page 41

result.[3] Claims of ineffective assistance of counsel are not usually cognizable at this stage of proceedings. *See United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003). Instead, the usual practice of this and other courts has been to defer on determining the issue of ineffectiveness of trial counsel until a collateral attack is mounted. *See id.*

## IV.   <u>CONCLUSION</u>

Upon consideration of the record and after consideration of the relevant law, the Court does not find that Rule 29 or Rule 33 relief is merited.  An appropriate order follows.

---

[3] This motion was filed *pro se*, and is docketed at ECF No. 127 as "Motion for New Trial and Appointment of New Counsel."